[No. 11169.   In Bank. — June 30, 1887.]

CHRISTOPHER GREEN ET AL., APPELLANTS,
STATE OF CALIFORNIA, RESPONDENT.

73   29
73   81
73   133
73   135
73   29
106   285
73   29
121   23

ACTION AGAINST STATE — LIABILITY HOW DETERMINED. — When a state authorizes itself to be sued, and there is no statutory or constitutional provision fixing a different liability, its measure of responsibility is to be determined by the same rule as that which determines the liability of ordinary private litigants.

ID. — ACT OF MARCH 12, 1885 — LIABILITY OF STATE UNDER — DAMAGES CAUSED BY CANAL. — The act of March 12, 1885, authorizing the plaintiffs to institute an action against the state for damages alleged to have been caused to their property by reason of the canal which had been constructed by the levee commissioners of the city of Sacramento, under the act of April 9, 1862, for the purpose of diverting the waters of the American River into the Sacramento River, was not an admission by the state of its liability for the alleged damages, nor a waiver of any legal defense it might have to the action, except its immunity from suit.

ID. — STATE NOT LIABLE FOR CONSEQUENTIAL DAMAGES — TAKING OF PRIVATE PROPERTY FOR PUBLIC USE. — Remote and consequential damages occasioned to the property of a private individual as an indirect result of the construction by the state of a public work do not constitute a taking of such property, within the meaning of a constitutional provision prohibiting the taking of private property for public purposes without compensation. For such damages the state is not responsible, in the absence of any statutory or constitutional provision imposing the liability.

APPEAL from a judgment of the Superior Court of Sacramento County.

On and prior to the 9th of April, 1862, the plaintiffs were the owners of certain lands situated on the west bank of the Sacramento River, about one half mile above the point at which the American River, through its natural channel, emptied into the Sacramento. On that day an act was passed by the legislature creating a levee commission for the city of Sacramento, and authorizing the commissioners to straighten the channel of any portion of the American River where they deemed the same necessary for the protection of the city of Sacramento. In pursuance of such authority, the levee commissioners

constructed a canal from a point about one half mile above the mouth of the American River to the channel of the Sacramento River, in such a manner as to conduct the waters of the American against the channel of the Sacramento at right angles, and at a point about 150 yards above the property of the plaintiffs. By reason of the construction of the canal, the waters of the American River flowed across the Sacramento River, to and against the west bank thereof, causing the damages complained of. On the 12th of March, 1885, the legislature passed an act authorizing the plaintiffs and others to institute actions against the state for such damages. The present action was brought in pursuance of such authorization. The defendant demurred to the complaint, and its demurrer was sustained. The further facts are stated in the opinion of the court.

*A. L. Hart*, and *C. T. Jones*, for Appellants.

A state, in its conduct with individuals, must be judged by the same rules which govern in similar cases between individuals; and whenever, by its own consent, it comes into court for the adjudication of its rights and obligations, those rights and obligations should be adjusted upon the same principles as if both parties to the suit were private individuals. (*People* v. *Stevens*, 71 N. Y. 527.) The state is liable for the damages done to the property of the plaintiffs by reason of the canal. (*Pumpelly* v. *Green Bay Co.*, 13 Wall. 177; *Sinnickson* v. *Johnson*, 17 N. J. L. 129; S. C., 34 Am. Dec. 184; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; S. C., 7 Am. Dec. 526; *Head* v. *Amoskeag Mfg. Co.*, 113 U. S. 26; *Eaton* v. *Boston etc.*, 51 N. H. 504; *Conniff* v. *San Francisco*, 67 Cal. 45; *Ex parte Martin*, 13 Ark. 199; S. C., 58 Am. Dec. 321; *Ashley* v. *Port Huron*, 35 Mich. 300; *Thompson* v. *Androscoggin Co.*, 54 N. H. 545; *Pettigrew* v. *Evansville*, 22 Wis. 223; *Winn* v. *Rutland*, 52 Vt. 481; *Jones* v. *United States*, 48 Wis. 404; *Cumberland* v. *Willison*, 50 Md. 138;

*Glover* v. *Powell*, 10 N. J. Eq. 211; *Morris Canal Co.* v. *Seward*, 23 N. J. L. 219; *Grand Rapids Booming Co.* v. *Jarvis*, 30 Mich. 308; *Lee* v. *Pembroke Iron Co.*, 57 Me. 481; *Wabash Canal Co.* v. *Spears*, 16 Ind. 441; S. C., 79 Am. Dec. 444; *Weaver* v. *Miss. Boom Co.*, 28 Minn. 534; *Cairo R. R. Co.* v. *Turner*, 31 Ark. 494; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 17; S. C., 31 Am. Dec. 313; *Thacher* v. *Dartmouth Bridge Co.*, 18 Pick. 502; *Nevins* v. *Peoria*, 41 Ill. 502; S. C., 89 Am. Dec. 392; *Tillotson* v. *Smith*, 32 N. H. 89; S. C., 64 Am. Dec. 355; *Williams* v. *N. Y. C. R. R.*, 16 N. Y. 97; S. C., 69 Am. Dec. 651; *Perry* v. *Wilson*, 7 Mass. 393; *Crittenden* v. *Wilson*, 5 Cow. 165; S. C., 15 Am. Dec. 462.)

*Attorney-General Marshall,* and *John T. Carey*, for Respondent.

The damages occasioned by the canal, being merely remote and consequential, do not constitute a taking within the meaning of the constitution; consequently the state is not liable therefor. (*Green* v. *Swift*, 47 Cal. 536; *Hoagland* v. *Sacramento*, 52 Cal. 142; Cooley's Constitutional Limitations, 669; *Hasbrouck* v. *Milwaukee*, 13 Wis. 37; S. C., 80 Am. Dec. 718; *Monongahela Nav. Co.* v. *Coons*, 6 Watts & S. 109; *Henry* v. *Pittsburgh etc. Bridge Co.*, 8 Watts & S. 86; *Philadelphia* v. *Trenton R. R. Co.*, 6 Whart. 46; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 47; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Davidson* v. *B. & M. R. R. Co.*, 3 Cush. 91; *Shrunk* v. *Schuylkill Nav. Co.*, 14 Serg. & R. 71; *Sprague* v. *Worcester*, 13 Gray, 193; *Alexander* v. *Milwaukee*, 16 Wis. 247; *McKeen* v. *Delaware Div. Can. Co.*, 49 Pa. St. 424; *Canal Appraisers* v. *People*, 17 Wend. 571; *Rundle* v. *Delaware & R. Can. Co.*, 14 How. 80.)

TEMPLE, J.—This appeal has already been twice decided, once in Department, and once by the court in Bank. In each decision the judgment was affirmed on

the authority of *Green* v. *Swift*, 47 Cal. 536. The court held that, inasmuch as the question was there determined by the highest judicial tribunal existing under the former constitution, and as the former constitutional provision involved has been changed, they would not reconsider the conclusion there reached.

The last rehearing was granted because the court was impressed by the positive and confident assertion of counsel that the court had entirely misconceived or misunderstood the point upon which appellants mainly relied. Counsel asserted: "It is not and has not been contended that the act authorizing the commencement of the action against the state operated to create any new liability on the part of the state, or any which had not previously existed, nor is it contended that the act of March 12, 1885, amounted to a concession of the state's liability." It is said: "The real point upon which appellants rely is, that when the state authorizes itself to be sued, and there is no statutory or constitutional provision fixing a different liablility, its measure of responsibility is to be determined by the same rule as that which determines the liability of one of its own citizens."

Properly understood, we accept this rule as correct. A state cannot be sued, because it is sovereign. It is supposed that one has but to make his grievance known, and if he has a lawful demand against the state it will at once be satisfied. But when the state permits itself to be sued, the matter is simply referred to the courts to determine whether the claim does or does not constitute a lawful demand against the state, and in such a case the only questions for the determination of the courts are, what has been done, and what are the legal principles by which the responsibility of the state is to be measured, and whether, applying these principles, the state should be held responsible. It consents to go before its courts and permit the claim against it to be determined upon those settled rules of law upon which the respon-

sibilities of ordinary parties litigant are determined; that is, as already stated, whether it has committed the act complained of, and if so, whether according to established rules of law it is responsible in damages.

Appellants contend that the liability of the defendant should be that of a citizen who straightened a stream on his own farm, diverting it from its natural channel in such manner as directly to produce the injury. But why? Such is not the fact. It was legally possible that the state should have been a proprietor, and that as such it should have straightened the stream. In such a case no doubt those considerations would determine the liability. But what is there in the act to force the state to trial upon an assumed case which is not true? If it had been a proprietor merely, it might have defended as such, and perhaps have claimed some right with reference to the property of defendant; but having in fact no other claim than that it is a state and was engaged in a public work for the common good, if it cannot set that up because it waived its sovereignty so that it could be sued, then it must admit that it is without defense, and the act must be considered a concession of the state's liability, which appellants say they do not claim.

Some force must be given to the language of the act which expressly refers the matter to the courts to ascertain if it is legally liable. The language is: "If it appears upon the trial of any of said actions that damage has been done to the plaintiff by any act for which the state is legally liable," etc. This language industriously excludes the idea that the liability was admitted, or that any legal defense was waived except that of immunity from suit. If, as is practically claimed, it waived not only its sovereignty, so that it could be sued, but also its only possible defense, that as a state it was engaged in a public work for the common good, it is difficult to see how any question of liability was involved to be referred to the courts.

It now remains to consider whether, under the settled rules and maxims of law, damage, such as the plaintiffs allege they have sustained, can be recovered. We are not, however, to approach this question admitting that the state is a wrong-doer. It is not to be assumed that the liability is that of one who, without claim of right, has changed the course of a stream and washed away the land of another. The complaint avers that the canal was a public work, constructed by the state for public uses. Is damage like this occasioned by such work actionable?

The canal was on the opposite side of the river to plaintiffs' land, about 150 yards above. The width of the river is not given, but we know the Sacramento to be a large, navigable stream. The work did not approach the land of plaintiff within two hundred or three hundred yards. There was no appropriation, occupation, or use of the land. The damage did not occur until five years after the work was completed. It could not have been known that any such injury would follow. The state could not then have condemned the land, and admitting that it could, the damage could not have been determined. It is held that to take land, compensation must be made, or at least provided in advance. Furthermore, a law which provides for a taking of private property for a public use without making provision for such compensation is void. Here, then, the state could not take by any lawful method what it is now contended, for the purpose of holding it liable for damages, it did in fact take at the time the work was constructed.

It is evident that those cases (if there be such) which hold that mere consequential damages is a taking within the limitation upon the power of eminent domain, use the word in an unusual and extended sense, and the reason for such extended sense is not hard to find. Of course, primarily, the word was used in reference to the necessities of the government to use the property sought.

But it has been held that the clause in the constitution — property shall not be taken without compensation — is not a grant of power, but a limitation, therefore the state is liable only to pay for property taken for public use. Hence the meaning of the word was extended to cover cases which, though not within the letter of the limitation, were within its spirit and meaning.

Most of the cases, however, in which it has been held that property *so* damaged is taken to that extent, are cases of corporations engaged in the public service in the sense that they can be authorized to use the power of eminent domain to condemn land, but yet which are engaged in business for the gain and profit of their stockholders. It is merely held here, that the delegation of the power of eminent domain does not relieve the corporation from ordinary liability for damages caused by carrying on its business. It was granted the power to take because of its public utility, but that did not confer the right to damage. Though performing a public service, it is yet not the state, which only acts for the public good, and which is only responsible as provided in the constitution.

If there can be found a case in the books which holds that under such facts as are alleged in this case the *state* is liable, our attention has not been called to it. The damage is plainly not the natural consequence of the work, which could and ought to have been anticipated and expected as the result. It was remote and consequential,—a purely incidental and unexpected effect. There was not enforced occupation of the property or interference with it. The owner was left in full possession, and there was done to the land or left upon it nothing to obstruct its use.

The case of *Pumpelly* v. *Green Bay Company*, 13 Wall. 166, is most relied upon, and it is a case by which the right of the parties here may well be tested, for the opinion in that case seems to admit that the doctrine there

announced, if not opposed to the current of authority upon the subject, at least modifies the rule as to the particular circumstances of that case. It is admittedly an extreme case in that direction. The court there says, speaking of this very point:—

"We are not unaware of the numerous cases in the state courts in which the doctrine has been successfully invoked, that for a consequential injury to property of the individual, arising from the prosecution of improvement of roads, streets, rivers, and other highways, for the public good, there is no redress; and we do not deny that the principle is a sound one, in its proper applicacation to many injuries to property so originating. And when, in the exercise of our duties here, we shall be called upon to construe other state constitutions, we shall not be unmindful of the weight due to the decisions of the courts of those states. But we are of the opinion that the decisions referred to have gone to the uttermost limit of judicial construction in favor of this principle, and in some cases beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, and other material, or by having an artificial structure placed upon it so as to effectually destroy or impair its usefulness, it is a taking."

It is evident there is nothing in this case in conflict with the doctrine of *Green* v. *Swift*. In the case from 13 Wallace, a dam was built which caused the water to continuously and permanently cover the land of plaintiff. It was physically and permanently occupied by a foreign body placed there by the defendant. When the dam was built it was easy to ascertain how much would be thus occupied. It was the natural, certain, and immediate consequence of the act. The land was really used by the defendant. There was no such state of affairs here.

But that court has itself declared the case of *Pumpelly*

v. *Green Bay Company* to be an extreme case, and explained if it has not modified its meaning. The case of *Transportation Company* v. *Chicago*, 99 U. S. 635, was an action on the case for damages sustained by reason of the construction of a tunnel by the city under the authority of an act of the legislature. After saying that no action would lie at common law, the court says: "The decisions to which we have been referred were made in view of Magna Charta, and the restriction to be found in the constitution of every state, that private property shall not be taken for public use without just compensation being made. But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair their use, are universally held not to be a taking within the meaning of the provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him a right of action. This is supported by an immense weight of authority. Those who are anxious to see the decisions will find them collected in Cooley on Constitutional Limitations, page 42, and notes. The extremest qualification of the doctrine is to be found perhaps in *Pumpelly* v. *Green Bay Company*, 13 Wall. 166, and in *Eaton* v. *Boston, Concord, and Montreal Railroad Company*, 51 N. H. 504. In those cases it was held that permanent flooding of private property may be regarded as a taking. In those cases there was a physical invasion of the real estate of the owner, and a practical ouster of his possession. But in this case there was no such invasion. No entry was made upon the plaintiff's lots. All that was done was to render for a time its use more inconvenient. The present constitution of Illinois took effect on the 8th of August, 1870, after the work of constructing the tunnel had been substantially completed. It ordains that private property shall not be taken or damaged for public use without just compensation. This is an exten-

sion of the common provision for the protection of property."

The case of *Eaton* v. *B. C. & M. R. R.*, commented upon in the above extract, is a very elaborately considered case, and strong ground was taken in favor of the proposition that when property is damaged in any way, it is taken within the meaning of the constitutional limitation. There the injury was more like that complained of here than in the other cases. After a very full discussion and citation of authorities, the learned judge says:—

"The defendants do not stand in the position of public bodies constituted for the sole purpose of executing a public trust or duty, in the performance of which they have no other interest than that which every citizen has. True, the public benefit may be so promoted by works authorized to be made by such corporation that the property of individuals taken by them by virtue of their charters may be deemed to be taken for public use within the constitutional provision on that subject. Still they exercise their corporate privileges under a grant of the legislature, conferring upon them specific powers for their own direct and private advantage. . . . . They are trustees of public interests for their own benefit. . . . . The defendants voluntarily accepted their charter with a view to their private emolument, and do not occupy the position of a municipality, invested without their consent, with powers to be exercised solely for the public benefit."

That is to say, it is carrying on business for private gain, and should be held responsible for injuries resulting from its mode of doing business, like any one else.

Now, these are the extreme cases upon this subject. In each case it is expressly said that the weight of authority is apparently the other way. Neither case is inconsistent with the conclusion arrived at in *Green* v. *Swift*. Our constitution has now been amended so as

to require compensation for property taken or damaged. This is itself an admission that property simply damaged is not taken. The question as here presented is no longer a vital one as to constitutional construction. We still adhere to our former opinion.

Coming to the conclusion we have, it has not been deemed necessary to discuss the objections to the act under which the action is brought, on the ground of unconstitutionality.

Had we determined that it was intended to allow the plaintiffs to recover damages for which the state was not legally liable, it would have been necessary to inquire whether the act did not give cause of action where none existed before, and whether this were not a gift prohibited by section 31, article 4, of the constitution.

We have assumed merely that the act intended to refer to the courts the inquiry whether the state was liable according to the rules and principles of law applicable to the subject; that is, practically, in this case, whether the damage is a *taking* within the constitutional limitation. This involves the assumption that the non-liability of the state does not depend upon its immunity from suit, but upon the nature of the injury as remote and consequential. There are careless expressions in some of the opinions which seem to indicate that the non-liability did depend upon the fact that the sovereign cannot be sued. But this is plainly contrary to the tenor and *rationale* of all the opinions, including those in which the expressions are used, which all make the solution turn upon the inquiry as to whether the damage was a taking of private property for public use, and therefore one for which the state must pay under the limitation. If we suppose a valid contract with the state under which materials have been furnished to the state for which no appropriation has been made, no one would hesitate to say that the state was legally liable, and if it declines to pay, all would agree that it took advantage

of its immunity from suit to avoid a legal obligation. (See *Bass* v. *State*, 34 La. Ann. 500.)

Judgment affirmed.

McFARLAND, J., SEARLS, C. J., and SHARPSTEIN, J., concurred.

McKINSTRY, J., concurring.—I concur in the judgment. I concur in Mr. Justice Temple's construction of the act of March 12, 1885, and in his conclusion that the act did not deprive the state of its right to rely upon any defense to this action which it had as *the state*, other than the right to claim that the state could not be sued, and that the act does not purport to do so.

I decline to express any opinion as to whether the plaintiff's property was "damaged." (Const. 1879, art. 1, sec. 14.) The property of the plaintiffs, if "taken" at all, was taken prior to the adoption of the present constitution.

I adhere to the views expressed herein in Department One.

The question whether the damages caused by the work done under the direction of the commissioners, appointed by the act of 1862, was a taking of private property, within the meaning of the provision of the former constitution prohibiting a taking of private property without compensation, was fully decided, adversely to such contention, by the highest judicial tribunal under that constitution. The questions involved in the judgment in *Green* v. *Swift*, 47 Cal. 536, must be considered as closed upon the doctrine of *stare decisis*.

THORNTON, J., dissenting.—I dissent from the foregoing opinions. I think there was a taking of the property of plaintiffs here, for which the state was legally responsible. (See cases cited in notes to section 243, Gould on Waters.)

The following is the opinion of Department One above referred to by Mr. Justice McKINSTRY, rendered on the 14th of July, 1886:—

McKINSTRY, J.—The action was brought under the act of March 12, 1885, authorizing the plaintiffs to institute an action against the state of California, . . . . "for damages which may be alleged to have been caused by the destruction of their property by reason of a canal which was cut by the order and direction of the levee commissioners, diverting the waters of the American River into the Sacramento River, under and by virtue of the authority conferred upon them by an act of the legislature of said state, entitled.'An act concerning the construction and repair of levees in Sacramento County, and the mode of raising revenue therefor, approved April 9, 1862.'" (Stats. 1885, p. 107.)

The sole purpose of the act is to permit an action against the state, and to regulate to some extent the proceedings in such action. Respondent contends that the act of March 12, 1885, is unconstitutional and void. But we do not find it necessary to pass on the question of its constitutionality.

Assuming the act to be valid, the demurrer, on the ground that the " cause of action " arose more than the statutory period of limitation before the action was brought, should have been overruled. The plaintiff had no capacity or right to sue the state until the enactment of March, 1885.

It is admitted that the act of April, 1862, is a valid act. It was so decided in *Green* v. *Swift*, 47 Cal. 536. If not valid, for any reason, it would have constituted no defense for the defendants in *Green* v. *Swift*.

And if the damages sustained by the work done by or under the direction of the levee commissioners· arose from the *taking* of private property (within the meaning of the constitutional provision, which prohibits such taking without compensation), the act of 1862, and the

work done by the levee commissioners in accordance with the act, would have constituted no defense in *Green* v. *Swift*. But in that case the court held that the injuries done to the plaintiffs therein (plaintiffs herein), being a destruction of property of a like character to that alleged in this complaint, was not a taking of property entitling the plaintiffs to recover compensation, but that any such alleged injury was *damnum absque injuria*. And it was there held that the act of 1862 furnished a sufficient defense to the defendants, — the levee commissioners and contractors. It is therefore a defense for the state.

If the question had not been determined by the highest judicial tribunal existing under the former constitution (and the canal had been dug after the adoption of the present constitution), we might hold, in view of the language of the present constitution, that injury such as that alleged in the complaint was a " damage " to property, for which the plaintiffs were entitled to compensation. But the acts which caused the alleged injuries were done while the former constitution was in force, and similar injury caused by the same acts was held by the Supreme Court, created by that constitution, not to be a " taking " within the meaning of the clause thereof, which prohibited a taking without compensation.

We have held heretofore that, under such circumstances, we must consider a question *stare decisis*.

Judgment affirmed.