[Sac. No. 287.   Department One.—May 31, 1898.]

## E. W. MELVIN, Appellant, v. STATE OF CALIFORNIA, Respondent.

STATE AGRICULTURAL SOCIETY—AGENCY OF STATE GOVERNMENT—CONSTITUTIONAL LAW.—The State Agricultural Society, under the act of 1880, became and remained a state institution, existing for the sole purpose of promoting the public interest in the business of agriculture and kindred objects, and is an agency of the government of the state, and in no sense an organization for pecuniary profit to the state; and the act establishing it is constitutional and valid, under section 1 of article IX of the state constitution.

ID.—STATE BOARD OF AGRICULTURE—ANNUAL FAIR—ADMISSION FEE.—The state board of agriculture is but the agency through which the sovereign authority of the state is carried out; and under the authority given to the board to provide for an annual fair, and to make needful rules, etc., the authority to provide for an admission fee may be implied, without implying that the society is organized for gain, or for pecuniary profit to the state.

ID.—HORSERACES NOT AUTHORIZED.—The state has made no provision for horseraces, or contests of speed, at the Agricultural Fair, but has impliedly discouraged them, by forbidding appropriations to be used therefor.

ID.—INJURY AT HORSERACES—DEFECTIVE SEATS—STATE NOT LIABLE.—Where the purchaser of a season ticket for the annual fair of 1891 attended upon horseraces upon a day when there was no other exhibit, and was injured by reason of the fall of defective and unsafe seats placed therein by the officers of the State Agricultural Society, the

state is not liable upon contract to such attendant for the resulting injury; nor is it liable in tort, by reason of the neglect of public duty on the part of the state board of agriculture.

ID.—ACTION AGAINST STATE—LIABILITY FOR ACTS OF OFFICERS.—The state is not suable except by its own consent; and no claim arises against it in favor of an individual by reason of the misfeasance, laches, or unauthorized exercise of powers by its officers or agents.

ID.—PERMISSIVE STATUTE—REMEDY—PREVIOUS WRONG.—The act of 1893 authorizing actions against the state by persons having claims on contract or for negligence against the state not allowed by the state board of examiners, is permissive, and merely gives to persons having demands against the state a remedy by action at law, where no such remedy before existed, but does not have the effect of giving a right of action for a previous wrong, where no liability therefor before existed.

ID.—PRIOR CONTRACT—WAIVER OF PRIOR TORT—ASSUMPSIT.—In order to maintain an action under the act of 1893 upon a prior contract with the state, facts must be averred and proved showing an authorized contract; and a prior tort cannot be waived and assumpsit maintained against the state under that act, where there was no previous liability of the state for such tort.

ID.—CONSTRUCTION OF STATE AGRICULTURAL ACT—LIMITATION OF STATE LIABILITY FOR "DEBT."—The provision in the act of 1880, regulating the State Agricultural Society, "that in no event shall the state be liable for any . . . . debt created by said board of agriculture," is to be construed as intended to hold the state free from liability for the obligations which the state board of agriculture might incur, calling directly or indirectly for the payment of money.

APPEAL from an order of the Superior Court of Sacramento County granting a new trial. Matt. F. Johnson, Judge.

The facts are stated in the opinion.

A. J. Bruner, Hiram Johnson, H. V. Morehouse, and C. E. Mack, for Appellant.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Assistant Attorney General, for Respondent.

SEARLS, C.—Action to recover damages from the state for injuries received at the State Fair at Sacramento, in 1891. Plaintiff had a verdict for $10,000.00, which, on motion of defendant, was set aside and a new trial granted. Plaintiff appeals from the order and brings the case here on a bill of exceptions.

The complaint avers, in substance, that in September, 1891,

·defendant held, conducted, and controlled an exhibition called a "State Fair" at Sacramento, state of California, which said State Fair was held by defendant for its own use and benefit and for the purpose of exhibiting and displaying to all persons who should attend, the products of defendant and other articles placed on exhibition therein, to which the defendant invited the public. That defendant sold tickets entitling the purchasers thereof to admission to the grounds and building where defendant held said fair; that plaintiff, on or about September 10, 1891, purchased of the defendant a season ticket, for which he paid five dollars, which entitled him to admission to said State Fair and the ground and buildings where the same was held; that on the twelfth day of September, 1891, plaintiff entered Agricultural Park to view the exhibition there being held by defendant and occupied a seat upon a stand which defendant had provided and maintained for the purpose of those who chose to occupy said stand and seats, and defendant promised that said stand and seats were safe for said purpose; that said stand and seats were not safe and secure, if occupied, of which plaintiff had no knowledge; that defendant knew said stand was weak, insecure, and unsafe, but neglected and refused to repair the same, and invited the public to occupy the same while in such insecure condition. That while plaintiff was seated upon such stand, by reason of its weakness, it gave way and fell, carrying plaintiff with it, whereby he was injured (describing his injuries) and damaged in the sum of twenty-five thousand dollars. That plaintiff presented his claim for damages to the board of examiners of defendant, and the same was rejected.

The answer of defendant denied all the allegations of the complaint; alleged contributory negligence, averred that the fair was held by the State Agricultural Society for its use and benefit and not for the state; said society derived all the benefit and profits thereof, which were the exclusive property of said society.

It seems to be conceded by both parties to the litigation that, while the motion for a new trial was based upon several grounds, the motion was granted upon the ground that the state is protected from liability by reason of its sovereignty, and by reason of the several statutes applicable or deemed applicable to the facts as presented.

The "California State Agricultural Society," as originally constituted, was a corporation created by an act of the legislature approved May 13, 1854. (Stats. 1854, p. 56.) The first section of the act established a corporation to be known and designated by the name and style of the "State Agricultural Society," with powers to sue and be sued, to contract and be contracted with, to have and use a common seal, to adopt by-laws, ordinances, rules, and regulations, etc. The subsequent sections authorize the corporation to purchase and hold land not exceeding two sections, to be held for the purpose of establishing a model experimental farm, erecting inclosures, etc., calculated, among other things, for an exhibition of various breeds of horses, cattle, mules, and other stock, and of agricultural, mechanical, and domestic manufactures and productions. Membership was attained by the payment of ten dollars annually. Officers were to be elected by the members yearly. The act appropriated five thousand dollars each year for four years to the society, to be used only in the payment of premiums. There were other provisions in the act not necessary to be mentioned here. Various statutes were subsequently passed, altering somewhat the charter of the corporation and appropriating money thereto, up to the adoption of our present constitution in 1879. Section 22 of article IV of that instrument contains, among other provisions, the following: "No money shall ever be appropriated or drawn from the state treasury for the use or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the state as a state institution."

Section 7 of article XII of the same instrument provides that: "The legislature shall not extend any franchise or charter . . . . of any corporation now existing, or which shall hereafter exist under the laws of this state."

It is apparent from the foregoing provisions of the constitution of 1879 that it became impossible for the state to grant further aid to the "State Agricultural Society," so long as it remained a private or quasi public corporation, and not under the exclusive management and control of the state. To obviate this difficulty, as we may well suppose, the legislature at its next session after the adoption of the constitution enacted a law on April 15, 1880 (Stats. 1880, p. 49), entitled, "An act to provide for the manage-.

ment and control of the State Agricultural Society." Section 1 of the act is as follows: "The State Agricultural Society is hereby declared to be a state institution."

The second section requires the governor, within ten days after the passage of the act, to appoint twelve resident citizens of the state, who shall, when organized, constitute "a state board of agriculture." They are required to qualify as required by the constitution; to meet at the office of the State Agricultural Society, elect one of their number as president of the board for a term of one year; to elect a secretary and treasurer not of their number to hold office at the discretion of the board. The fifth section is as follows: "The state board of agriculture shall be charged with the exclusive management and control of the State Agricultural Society as a state institution; shall have possession and care of its property, and be intrusted with the direction of its entire business and financial affairs. They shall define the duties of the secretary and treasurer, fix their bonds and compensation, and shall have power to make all necessary changes in the constitution and rules of the society; to adapt the same to the provisions of this act, and to the management of the society, its meetings and exhibitions. They shall provide for an annual fair or exhibition by the society of all the industries and industrial products of the state, at the city of Sacramento; provided that in no event shall the state be liable for any premium awarded or debt created by said board of agriculture."

The sixth section authorizes the board to appoint all necessary marshals and police to keep order and preserve the peace at the annual fairs of the society, and gives to such officers when appointed the same authority in preserving the peace on the grounds and in the buildings as other peace officers. Section 7 is as follows: "Said board shall use all suitable means to collect and disseminate all kinds of information calculated to educate and benefit the industrial classes, develop the resources and advance the material interests of the state, and shall, on or before the first day of February of each year, report to the governor a full and detailed account of their transactions, statistics and information gained, and also a full financial statement of all funds received and disbursed. They shall also make such suggestions and recommendations as experience and good policy may dictate

for the improvement and advancement of the agricultural and kindred industries."

The act provides that all members of the board shall be appointed by the governor, and contains provisions in regard to county and district agricultural societies not necessary to this inquiry. It also repeals all laws and parts of laws in conflict with the act.

We take judicial notice of the fact that the legislature has, at each of its sessions since the passage of the foregoing act of 1880, appropriated sums of money for the State Agricultural Society ranging from four thousand five hundred dollars in 1880 to forty thousand dollars in 1897.

Until February 28, 1893, nearly a year and a half after plaintiff's alleged cause of action accrued, no suit could be maintained against this state. On the last-mentioned date an act was passed (Stats. 1893, p. 57) entitled, "An act to authorize suits against the state, and regulating the procedure therein." The first section of the act is as follows: "All persons who have, or shall hereafter have, claims on contract or for negligence against the state not allowed by the state board of examiners are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment. The rules of practice in civil cases shall apply to such suits, except as herein otherwise provided."

Section 32 of article IV of the constitution is in part as follows: "The legislature shall have no power . . . . to pay, or to authorize the payment of, any claim hereafter created against the state, or any county or municipality of the state, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void."

1. The State Agricultural Society, under the act of 1880, became, ever since has been, and now is a state institution. The state board of agriculture provided for therein is "charged with the exclusive management and control of the State Agricultural Society as a state institution." We find none of the elements of a private corporation in its creation, its powers, or the mode of their exercise. Its objects are public and educational. They

aim to improve agricultural and kindred industries; to dissemi-
nate information calculated to educate and benefit the industrial
classes; and to advance by such means the material interests of
the state.   These objects are not widely different from those
sought by our public school system.

The legislature found ample authority for its action in the con-
stitution; section 1 of article IX of that instrument is as follows:
"A general diffusion of knowledge and intelligence being essen-
tial to the preservation of the rights and liberties of the people,
the legislature shall encourage by all suitable means the promo-
tion of intellectual, scientific, moral, and agricultural improve-
ment."

The act in question pursues the line thus indicated.   The
board constituted thereby is but the agency through which the
sovereign authority of the state is carried out..   The state appro-
priates its money, and the society receives it in aid of the benign
objects in view.   The state receives no pecuniary return.   One
object of requiring the annual report from the board of its re-
ceipts and expenditures doubtless is that the legislature may be-
come familiar with the needs of the society and gauge its appro-
priations accordingly.

Respondent contends that, as there was no statute expressly au-
thorizing the board of agriculture to charge admission fees to the
State Fair, their conduct in so doing was without authority of law
and void.   We are of opinion, however, that under the authority
given to the board to provide for an annual fair, etc., to alter the
constitution and to make needful rules, etc., the authority to pro-
vide for an admission fee may be implied.   It does not follow,
however, that the society is organized for gain.   It exists for the
sole purpose of promoting the public interest in the business of
agriculture and kindred objects.   It is an agency of the govern-
ment, and in no sense an organization for pecuniary profit to the
state.   (*Daggett v. Colgan*, 92 Cal. 56; 27 Am. St. Rep. 95.)

2. The states are not suable except with their own consent.
(*Railroad Co. v. Tennessee*, 101 U. S. 337; *Railroad Co. v. Ala-
bama*, 101 U. S. 832.)

No claim arises against any government in favor of an indi-
vidual, by reason of the misfeasance, laches, or unauthorized exer-
cise of powers by its officers or agents.   (*Gibbons v. United States*,

8 Wall. 269; *Clodfelter v. State*, 86 N. C. 51, 53; 41 Am. Rep. 440; *Chapman v. State*, 104 Cal. 690; 43 Am. St. Rep. 158; *Green v. State*, 73 Cal. 29; *Bourn v. Hart*, 93 Cal. 321; 27 Am. St. Rep. 203; Story on Agency, sec. 319.)

It follows from those and kindred authorities that, if the acts of the board of agriculture and its subordinates constituted a tort pure and simple, it gave to the appellant no right of action against the state, and the passage of the act of 1893, after the commission of the tort, did not have the effect of giving a right of action for a wrong where none before existed. The act was permissive, and gave to parties having demands against the state a remedy, by action at law, where no such remedy before existed. We do not regard the fact that a tort may be waived and an action in *assumpsit* maintained as conclusive upon this point. In most cases of tort this may be done, but when an action is brought against the state, which was not liable for a tort at the time the cause of action arose, the allegations of the complaint should aver such facts as show distinctly an authorized contract, and the proofs should correspond therewith. All this the plaintiff averred in the present case. The answer denied all these allegations.

The evidence showed simply that plaintiff purchased a season ticket which entitled him to admission to the State Fair; that on the day of his injury he visited Agricultural Park to witness a horserace or races there being carried on, and that on that day there was no other exhibit than the races. The state had made no legal provision for races or contests of speed. It had, impliedly at least, discouraged them. In the appropriation bill of the then current year, viz., 1891, the legislature appropriated forty thousand dollars "for aid to State Agricultural Society, . . . . provided that no moneys appropriated for agricultural societies shall be drawn, paid, or used for racing or speed contests." Under these circumstances, we fail to see any foundation for plaintiff's claim, except the duty which devolved upon the officers by operation of law to see to it that plaintiff was not injured by any act of misfeasance or nonfeasance on their part, which duty would have been equally binding upon them had plaintiff by their consent entered the grounds without the payment of an admission fee. To neglect this duty was negligence, and negligence under

such circumstances was a tort committed by such officers in the performance of a public duty, and not upon a contract entered into by the state with the plaintiff. The case of *Gibbons v. United States, supra,* is instructive on this last point.

If, however, it be conceded that plaintiff's cause of action arose out of contract, the question still remains, Can plaintiff, under the act of 1880, recover against the state in this action? It will be remembered that the fifth section of that act, after conferring authority upon the state board of agriculture to manage and control the society, and enjoining upon the board the duty of providing for an annual exhibition, etc., closes as follows: "Provided, that in no event shall the state be liable for any premium awarded or debt created by said board of agriculture." That the state could limit its liability in the premises as to future contracts we do not doubt. Parties dealing thereafter with the board did so with full knowledge of the law as it stood, and cannot complain if they are precluded from redress against the state.

Appellant contends, however, with great earnestness that the term "debt created" does not cover a case like the present. It is true that the primary definition of "a debt" is a sum of money due by certain and express agreement. (3 Blackstone's Commentaries, 154.) "An action at law to recover a specified sum of money alleged to be due." (Burrill's Law Dictionary.)

The term "debt," however, has a much broader popular significance than the foregoing technical definition, and includes that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; obligation; liability. (Webster's Dictionary.)

So, too, in statutes the term is often construed as including liabilities. In *Carver v. Braintree Mfg. Co.,* 2 Story, 432, 439, it was held that debts contracted, in a statute relating to individual liabilities of members of manufacturing corporations, was equivalent to dues owing or liabilities incurred. A debtor is one who owes anything, or who is under obligation arising from express agreement, implication of law, or from the principles of natural justice, to render and pay a sum of money to another. (*Stanly v. Ogden,* 2 Root; 259.)

In *Dunsmoor v. Furstenfeldt,* 88 Cal. 529, 22 Am. St. Rep. 331,

it is said: "Any kind of obligation of one man to pay money to another is a debt.  A debt signifies what one owes.  There is always some obligation that it shall be paid; but the manner in which . . . . it is to be paid, or the means of coercing payment, do not enter into the definition." (Citing *Rodman v. Munson*, 13 Barb. 197.)

Reference is also made to *New Jersey Ins. Co. v. Meeker*, 37 N. J. L. 300, for a full exposition of the word "debt" as used in law and especially in statutes.  It is sufficient to say of that case that it supports the definition of "debt" as enunciated in *Dunsmoor v. Furstenfeldt, supra.*

Part II of Division IV of our Civil Code relates to "Special Relations of Debtor and Creditor."  Title I of the part contains general principles.  Section 3429 is as follows: "A debtor, within the meaning of this title [title I], is one who, by reason of an existing obligation, is or may become liable to pay money to another, whether such liability is certain or contingent."

Section 3430 is as follows: "A creditor, within the meaning of this title, is one in whose favor an obligation exists, by reason of which he is or may become entitled to the payment of money."

So far as we have observed, wherever the term "debt" is used in our code it is so used in that broader sense which includes demands or obligations upon contracts payable in money.  To illustrate: An executor or administrator "must . . . . collect all debts due to the decedent or to the estate." (Code Civ. Proc., sec. 1581.)

Manifestly, as we think, he is thereby authorized to collect, not only all demands on contracts payable in sums certain, but also those obligations or demands capable of liquidation.  "The earnings of the wife are not liable for the debts of the husband." (Civ. Code, sec. 168.)  "The separate property of the husband is not liable for the debts of the wife contracted before marriage." (Civ. Code, sec. 170.  See, also, Civ. Code, sec. 171.)

In all these provisions we think it plain that the construction to be put on the statute is, not that the spouses were simply to enjoy immunity from such contracts for sums of money due by certain and express agreement, which fixed the amount due, independent of extrinsic circumstances—from such contracts as would have supported an action of debt at common law—but rather

that the word "debt" is to be used in its modern legal significance, as including any sort of obligation to pay money, and that it signifies what either of the spouses owes. So in the present case we are of opinion that by the term "debt," used in the statute of 1880, it was intended to hold the state free from liability for the obligations which the state board of agriculture might incur, calling directly or indirectly for the payment of money.

It follows that granting the motion for a new trial was proper, and we recommend that the order appealed from be affirmed.

Haynes, C., Belcher, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.