[Sac. No. 1481. Department One.—September 4, 1907.]

## THE PEOPLE ex rel. FRED J. POST et al., Appellant, v. SAN JOAQUIN VALLEY AGRICULTURAL ASSOCIATION et al., Respondents.

DISTRICT AGRICULTURAL ASSOCIATION—PUBLIC CORPORATION.—A district agricultural association, organized under the act of April 15, 1880, for the purposes specified therein, is a public agency of the state, within its exclusive management and control, and is charged with the performance of a part of the functions of the state government. Such an association is a public corporation.

ID.—PROPERTY EXEMPT FROM EXECUTION—ASSENT OF STATE—LIABILITY TO SUIT.—The property of such an association, used to carry on the purposes for which it was formed, is so far public property that it cannot be taken in execution and sold thereon to enforce payment of a judgment, unless the state has manifested its assent thereto by a law permitting it to be done. No such assent has been given by the state. The fact that the statute of April 15, 1880, provides that such an association may sue and be sued does not imply such assent.

ID.—SETTING ASIDE JUDGMENT — STATUTE OF LIMITATIONS — FRAUD.— Under subdivision 4 of section 338 of the Code of Civil Procedure, an action to set aside a judgment against such an association, on the ground that it was obtained through the fraudulent failure of the district board of agriculture to plead certain facts that would have been a good defense to the action in which the judgment was rendered, must be commenced within three years, but the period of limitation does not begin to run until after the discovery of the facts constituting the fraud.

ID.—PLEADING DISCOVERY OF FRAUD—INSUFFICIENT AVERMENTS.—An
   allegation in the complaint to set aside the judgment, that the
   failure to set up the so-called defense in the action in which the
   judgment was rendered "was not discovered by the plaintiff, or the
   said relators, or any of them, until within two months next before
   the commencement of this action," is not sufficient to excuse the
   delay in bringing the action after three years from the rendition
   of the judgment, when the complaint does not allege any reason for
   the failure to make the discovery, nor state that any diligence had
   been exercised, nor show that if reasonable diligence had been
   exercised, it would not have been discovered sooner.

APPEAL from a judgment of the Superior Court of San
Joaquin County. Paul W. Bennett, Judge presiding.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Aug. Muenter, and Aug.
E. Muenter, for Appellant.

Nicol & Orr, and Budd & Thompson, for Respondents.

SHAW, J.—The court below sustained a demurrer to the
complaint and thereupon gave judgment in favor of the de-
fendants, from which the plaintiff appeals. By the action
the plaintiff seeks to recover from the defendants R. W.
Russell, Louis Gerlach, James H. Budd, M. A. Moore, Lotta
Moore, and Nellie E. Jordan the possession of certain tracts
of land, and to set aside a judgment rendered in favor of
defendants Louis Gerlach, R. W. Russell, James H. Budd,
and M. A. Moore against the defendant the San Joaquin
Valley Agricultural Association. The relators are members
of said association and the action is prosecuted for said
association's benefit, to restore to it the possession of the
land and to relieve it from said judgment.

The defendants in possession of the land hold it under a
sheriff's sale and deed, made in the enforcement of an execu-
tion issued upon the judgment. The plaintiff claims that
the association is a public corporation created for the local
administration of a part of the affairs of the state, and that
as such its property is not subject to execution, unless made
so by statute; that there is no such statute, and hence that
the sale and deed aforesaid are void. As to the judgment,
the claim is that it was procured by actual and constructive

fraud on the part of the judgment plaintiffs, extrinsic and collateral to the action in which it was given.

1. The association is a corporation formed under the act of April 15, 1880, (Stats. 1880, p. 238). A consideration of the provisions of that act, in connection with the previous legislation on the subject of agricultural societies, the provisions of the constitution of 1879, and the subsequent legislation concerning corporations of the character of the defendant corporation, clearly shows that the association is a public corporation engaged in carrying on one of the objects committed to the state government by the constitution.

In 1859 a general law was enacted authorizing the formation of local agricultural societies. (Stats. 1859, p. 104.) Under this act, prior to 1880, some twelve societies were formed in various parts of the state. Among them was one in San Joaquin County, known as the San Joaquin Valley Agricultural Association. In 1854 the "California State Agricultural Society" was incorporated by the legislature. Neither this corporation nor any of the societies formed under the act of 1859 was a public corporation, or, at all events, neither of them was a state institution, or under the control and management of the state, but all were either private corporations or quasi-public corporations, formed to promote an object in which the general public was interested and by which the public would be benefited, but for the profit and emolument of the persons interested therein. (*Melvin* v. *State*, 121 Cal. 19, [53 Pac. 416].) Under the constitution of 1849 the legislative power to appropriate money directly to such institutions, and to authorize counties to give them pecuniary assistance, was unfettered. It became customary at every session of the legislature to pass laws appropriating money to the state agricultural society and to each of the several subordinate societies organized under the act of 1859. Appropriations of this character were made to the San Joaquin Valley Agricultural Association aforesaid, in the years 1861, 1863, 1872, and 1878. (Stats. 1861, p. 407; 1863, p. 522; 1871-1872, p. 442; 1877-1878, p. 332.) The legislature at almost every session from 1860 to 1872 also authorized the county of San Joaquin to donate money to said society. Similar aid was authorized to other societies in other counties. In 1863 San Joaquin County was author-

ized to issue its bonds to the amount of twenty thousand dollars and give or loan the money thus raised to that society (Stats. 1863, p. 7), and in 1865 a special tax was authorized to pay these bonds.

This was the situation when the present constitution was framed and adopted in 1879. Article IV of this constitution contains radical measures concerning such legislation. Section 22 provides that ''no money shall ever be appropriated or drawn from the state treasury for the use or benefit of any corporation, association, asylum, hospital or any other institution *not under the exclusive management and control of the state as a state institution,* nor shall any grant or donation of property ever be made thereto by the state.'' Certain exceptions were made relative to the support of orphans which are immaterial to the present discussion. Section 29 was as follows: ''The general appropriation bill shall contain no item or items of appropriation other than such as are required to pay the salaries of the state officers, the expenses of the government, and of the institutions *under the exclusive control and management of the state.''* Section 31 took from the legislature the power to give, lend, or authorize the giving or lending of the state's credit, or that of any county, city and county, city, or township, or other political corporation or subdivision of the state, in aid of or to any person, association, or corporation, municipal or otherwise, or to pledge the credit thereof in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; or to make or authorize the making of any gift of any public money or thing of value to any individual, municipal or other corporation whatever.

These limitations divested the legislature of all power to make appropriations of money to any private or quasi-public corporation, or to make any gift to any municipal or public corporation not under the exclusive control and management of the state. It also deprived the legislature of the power to authorize counties to make donations or gifts or pledges of credit to such associations. The constitution does not give to any department of the state government any power whatever to engage in private business or enterprise, or to manage and control private corporations or quasi-public corpora-

tions for private profit, although such corporations may be carrying on enterprises or performing functions which are for general public benefit and which tend to promote the general welfare. Our state government has no such powers. It is not organized to promote the general welfare in that manner or by that means, but only by and through its public governmental powers, and by means of agencies which constitute part of the state government. These previously existing societies formed no part of the state government, and hence further aid to them by appropriations of money from the state was impossible.

Under these circumstances, and for the manifest purpose of creating such agencies to carry on the same public work, agencies to which money could be appropriated from the state treasury by the legislature, the next succeeding legislature, in 1880, enacted two laws; one declaring the state agricultural society to be a state institution, organizing the state board of agriculture and charging it with the exclusive management and control of the state agricultural society as a state institution (Stats. 1880, p. 212) ; the other, the act here in question, dividing the state into eleven agricultural districts, to be composed of certain named counties, and providing for the organization of corporations therein, to be known as agricultural associations (Stats. 1880, p. 238). In many respects these statutes were similar, and both were obviously passed to carry out the same public policy and achieve the same general result. The general purpose of the first-mentioned act is shown by the duties enjoined on the state board, which were "to collect and disseminate all kinds of information calculated to educate and benefit the industrial classes, develop the resources, and advance the material interests of the state," and to obtain and publish "such suggestions and recommendations as experience and good policy may dictate for the improvement and advancement of the agricultural and kindred industries." The general purpose of the district associations was declared in the latter act to be "the improvement of the material industries of the state." In every legislative year thereafter, until 1903, the general state appropriation act has contained items appropriating from the state treasury various sums of money to the state agricultural society thus constituted, and to each of the several district agricultural as-

CLI Cal.—51

sociations that became organized under the act here involved. In 1895 the items relating to these district agricultural associations were vetoed by the governor. The legislature of 1903, and succeeding legislatures, have, perhaps wisely, refused to appropriate money for these associations.

In the case of *Melvin* v. *State,* 121 Cal. 19, [53 Pac. 416], it was held that the state agricultural society, as incorporated by the act aforesaid, was neither a private nor quasi-public corporation, but was a public corporation, an agency of the state, to carry out one of the functions of the state government, and that as such, in the absence of a permitting statute, it was not subject to suit by a private person. It was said in the opinion that the legislature found ample authority for the organization of such public corporations in section 1 of article IX of the constitution, which declares that "a general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement." Whether this provision was intended to give this power or not, it is undoubtedly within the power of the state to organize and carry on such institutions. In the opinion in *In re Madera Irr. Dist.,* 92 Cal. 313, [27 Am. St. Rep. 106, 28 Pac. 272], the court says: "Whatever tends to an increased prosperity of one portion of the state, or to promote its material development, is for the advantage of the entire state; and the right of the legislature to make provision for developing the productive capacity of the state, or for increasing facilities for the cultivation of its soil according to the requirements of the different portions thereof, is upheld by its power to act for the benefit of the people in affording them the right of 'acquiring, possessing, and protecting the property' which is guaranteed to them by the constitution." And again, on page 315: "The means by which the legislature may exercise this power is left to its own discretion, except as it may be limited by the constitution. . . . It may, too, by general laws, authorize the inhabitants of any district, under such restrictions, and with such preliminary steps as it may deem proper, to organize themselves into a public corporation, for the purpose of exercising those governmental duties, upon the same principle that it authorizes the incor-

poration of any municipal corporation under general laws.''
And again, on page 317: ''Although in this state the legisla-
ture is required to provide such agencies under general laws,
it is authorized, under its general power of legislation, to in-
vest such corporations, when created, with the same powers
which, without such restriction, it could itself have ex-
ercised; and in providing for such organizations it need confer
upon them only such powers as in its judgment are proper to
be exercised by them in the discharge of the particular func-
tions of government which may be conferred upon them.
Being the representatives of the legislature in the various
localities of the state, the requirements for organization, as
well as the powers to be exercised, vary with the character of
the purpose for which they may be created.'' The carrying
out of the purposes prescribed by these statutes regarding
agricultural associations is a matter of general public interest,
and would tend to increase the productive power of the land,
the growth of the state in population, and the wealth of the
people. It is as much a matter of state concern as are school
districts formed to carry on the public schools, sanitary dis-
tricts for the protection and preservation of the health of the
inhabitants thereof, reclamation and levee districts to drain
the swamp lands therein or to protect them from overflow,
or irrigation districts to procure and distribute water for
irrigation of lands within their limits, all of which have been
declared to be public corporations or agencies of the state.
(See cases hereinafter cited.) Although some of these institu-
tions may be authorized by express provisions of the constitu-
tion, all are not so authorized, and the power to create such
agencies to carry on such operations exists in the government
of the state without a more particular constitutional grant
than those embraced in section 1 of article IV. (*In re Ma-
dera Irr. Dist.*, 92 Cal. 307, [27 Am. St. Rep. 106, 28 Pac.
275].)

The provisions of the act providing for district agricultural
associations clearly evince an intention to make them public
corporations. The entire state was divided into agricultural
districts. Fifty or more persons, representing a majority of
the counties within one of the districts, were authorized to
form an association for the purposes of the act. The associa-
tion was to have perpetual succession and certain enumerated

powers. Its real estate was to be used for the purpose of holding exhibitions of the live-stock and products of the district, "with view to the improvement of all industries in the same." It was to be managed by a district board of agriculture, consisting of eight members, who were to be resident citizens of the district, were to hold office four years, and were to be appointed by the governor of the state, who was also authorized to fill vacancies. Each member of such board was required to qualify, by taking the oath of office of public officers prescribed by section 3 of article XX of the constitution, within ten days after his appointment. Section 17 of the act is in part as follows: "Each association so formed and organized is hereby declared and shall be recognized a *state institution*, and the board so appointed and qualified *shall have the exclusive control and management of such institution for and in the name of the state*, and shall have the possession and care of all the property of the association, and shall fix the terms of office and the bonds of the secretary and treasurer, and determine their salary and duties."

The legislature in subsequent acts assumed to exercise full power over these associations. The original act designated the counties of San Joaquin, Calaveras, Fresno, Kern, Merced, Mariposa, Stanislaus, Tulare, and Tuolumne as "Agricultural District No. 2." By subsequent acts the district has been changed and reduced, and in 1893 it was made to consist of San Joaquin County alone. (Stats. 1893, p. 282.) The number of districts in the state has been increased from time to time, until there are now forty-five. (Stats. 1901, p. 304.) In 1891, a new statute was enacted, substantially the same as that of 1880, declaring that all associations formed under the previous act should be continued in force and made associations under the new act. (Stats. 1891, p. 138.) In 1897 a similar act was enacted, and the previously established associations were continued in force and made agricultural associations under the latter act. This statute also provided that such associations should have the option of converting themselves into stock companies and issuing certificates of stock. (Stats. 1897, p. 304.) It does not appear that the defendant association has ever availed itself of this privilege. If it had done so, interesting questions would arise concerning its *status* and its character as a corporation which are not presented as the case stands.

All these considerations conclusively demonstrate that these associations are public agencies of the state, within its exclusive management and control, and charged with the performance of a part of the functions of the state government. Such corporations in this state have always been held to be public corporations. (*Dean* v. *Davis,* 51 Cal. 410; *People* v. *Reclamation Dist.,* 53 Cal. 348; *People* v. *Williams,* 56 Cal. 647; *People* v. *Larue,* 67 Cal. 528, [8 Pac. 84]; *People* v. *Reclamation Dist.,* 117 Cal. 119, [48 Pac. 1016]; *San Francisco Sav. Union* v. *Reclamation Dist.,* 144 Cal. 643, [79 Pac. 374]; *Hoke* v. *Perdue,* 62 Cal. 546; *People* v. *Levee Dist.,* 131 Cal. 30, [63 Pac. 676], holding reclamation districts and levee districts to be public corporations; *Hughes* v. *Ewing,* 93 Cal. 417, [28 Pac. 1067]; *Estate of Bulmer,* 59 Cal. 131; *Kennedy* v. *Miller,* 97 Cal. 432, [32 Pac. 558], declaring school districts to be public corporations; *Turlock I. D.* v. *Williams,* 76 Cal. 368, [18 Pac. 379]; *Central Irrigation Dist.* v. *DeLappe,* 79 Cal. 353, [21 Pac. 825]; *People* v. *Selma etc. Dist.,* 98 Cal. 208, [32 Pac. 1047]; *Crall* v. *Poso Irr. Dist.,* 87 Cal. 145, [26 Pac. 797]; *People* v. *Turnbull,* 93 Cal. 632, [29 Pac. 224], holding irrigation districts to be public corporations; and *In re Werner,* 129 Cal. 567, [62 Pac. 97], declaring sanitary districts to to be public corporations.)    These institutions are public corporations "formed . . . for the government of a portion of the state," as defined in section 284 of the Civil Code, but, as is pointed out in *Dean* v. *Davis,* 51 Cal. 410, "to constitute a public corporation, it is not essential that it shall exercise *all* the functions of government within the prescribed districts. . . . It is but an instrumentality of the state, and the state incorporates it that it may the more effectually discharge its appointed duty." (See, also, Dillon on Municipal Corporations, sec. 25.)

The case of *Downing* v. *Indiana State Board of Agriculture,* 129 Ind. 443, [28 N. E. 123, 614], holding that institution to be a private corporation, is cited as opposed to these views. There is, however, a marked distinction between the laws of Indiana organizing that corporation and our statutes and constitutional provisions above referred to. There was in that case no necessity for making the institution a public corporation in order to authorize the making of appropriations to carry on the same. And the intention that it should be a

public corporation under the management and control of the state was not manifested by the provisions of the statute there under consideration as it is by the terms of our statute.

The property of such corporations or state agencies which is used to carry on the purposes for which such institutions are formed is so far public property that it cannot be taken in execution and sold thereon to enforce payment of a judgment, unless the state has manifested its assent thereto by a law permitting it to be done. (*San Francisco Sav. Union* v. *Reclamation Dist.*, 144 Cal. 648, [79 Pac. 374]; *Hensley* v. *Reclamation Dist.*, 121 Cal. 96, [53 Pac. 401]; *Skelly* v. *School Dist.*, 103 Cal. 652, [37 Pac. 643]; *Emeric* v. *Gilman*, 10 Cal. 410, [70 Am. Dec. 742]; *Mayrhofer* v. *Board*, 89 Cal. 110, [23 Am. St. Rep. 451, 26 Pac. 646]; *Witter* v. *School Dist.*, 121 Cal. 350, [66 Am. St. Rep. 33, [53 Pac. 905]; *Whittaker* v. *Tuolumne*, 96 Cal. 100, [30 Pac. 1016]; *Reclamation Dist.* v. *Sacramento*, 134 Cal. 480, [66 Pac. 668], *Ruperich* v. *Baehr*, 142 Cal. 193, [75 Pac. 782]; *Gilman* v. *Contra Costa*, 8 Cal. 58, [68 Am. Dec. 290]; *Hunsaker* v. *Borden*, 5 Cal. 290, [63 Am. Dec. 130]; *Sharp* v. *Contra Costa County*, 34 Cal. 290; *Hart* v. *Burnett*, 15 Cal. 530, 583; 1 Dillon on Municipal Corporations, sec. 100; 2 Dillon on Municipal Corporations, secs. 576, 577.)

The statute under which these associations were organized provides that they may sue and be sued. This, however, does not imply that the public property which such association holds and uses for the public purposes which it was created to serve can be seized on execution to pay a judgment recovered in such suit. This is abundantly shown by the authorities last cited. The complaint alleges that the real property in question has always been used by the defendant association for the purpose of holding the exhibitions which the association is required to hold annually by the provisions of the statute, and that it is needed for permanent use for that purpose. By the demurrer this allegation is admitted to be true. It follows that the property was not subject to execution, that the sale and sheriff's deed under which defendants claim title and possession are void, that plaintiff is entitled to recover possession, and that as to this point the demurrer was improperly sustained.

2. The right of action of plaintiff to vacate the judgment against the association, on the ground that it was procured by

fraud, is barred by the statute of limitations. The date on which the judgment sought to be set aside was rendered does not expressly appear, but it is alleged that an execution was issued thereon on the third day of October, 1900, and, consequently, it must have been rendered prior to that date. The present action to set aside the judgment was begun on July 14, 1905, four years and nine months after the execution was issued. By subdivision 4 of section 338 of the Code of Civil Procedure, an action for relief on the ground of fraud must be begun within three years, but the period of limitation does not begin to run until the discovery of the facts constituting the fraud. It is alleged that the failure of the district board of agriculture of district No. 2 to allege in its answer in the action in which the judgment was rendered certain facts which it is claimed would have constituted a good defense to said action was fraudulent, and that it was by means of· this fraudulent neglect that the judgment against the association was obtained. The attempt was made to bring the action within the period of limitation above mentioned by the bare averment that the failure to include the so-called defense in the answer "was not discovered by the plaintiff, or the said relators, or any of them, until within two months next before the commencement of this action." This is not a sufficient allegation to excuse the delay. It gives no reason for the failure to make the discovery and does not state that any diligence had been exercised, nor does it show that if reasonable diligence had been exercised it would not have been discovered sooner. The answer in the action was filed on May 23, 1899, so that the act constituting the fraud, if fraud it was, was actually committed at that time, which was more than six years before the present action was begun. "It is not enough to assert merely that the discovery was not sooner made; it must appear that it could not have been made by the exercise of reasonable diligence. And that which reasonable diligence would have disclosed, plaintiff is presumed to have known; means of knowledge in such a case being the equivalent of the knowledge which it would have produced." (*Truett* v. *Onderdonk*, 120 Cal. 589, [53 Pac. 26].) " 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts constituting the fraud, within the meaning of the statute of

limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must first be pleaded. It is not enough that the plaintiff merely aver that he was ignorant of the facts at the time of their occurrence and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged.'' (*Lady Washington Co.* v. *Wood,* 113 Cal. 486, [45 Pac. 809].)

For these reasons we are of the opinion that so far as the action seeks to obtain a vacation of the judgment referred to it is barred by the statute of limitations.

The judgment is reversed and the cause remanded.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.