[Civ. No. 7583.   Third Dist.   Dec. 3, 1952.]

OTTIE GILLESPIE et al., Appellants, v. CITY OF LOS ANGELES et al., Defendants; STATE OF CALIFORNIA, Respondent.

Ben C. Cohen and Leo Shapiro for Appellants.

Edmund G. Brown, Attorney General, Alexander Googovian, Deputy Attorney General, Robert E. Reed and Russell S. Munro, Attorneys for Department of Public Works, for Respondent.

SCHOTTKY, J. pro tem.—Plaintiffs and appellants commenced an action against defendants for damages for the death of the occupants of an automobile which, on September 4, 1943, went off the Topanga Canyon Road, also known as State Highway Route 156, in the city of Los Angeles, fell to the bottom of the canyon and burned. The complaint alleged a dangerous, unsafe and defective condition in the highway, consisting of a sharp, unmarked curve without

guardrails or warning signals, in what appeared to be a straight and continuous road.

The action was filed in Los Angeles County, and separate answers were filed by the city of Los Angeles and the State of California. Thereafter on motion of defendant State of California it was transferred to Sacramento County for trial, and the following stipulation was entered into between plaintiffs and the State of California:

". . . That since said defendant desires to present to the above-entitled court the defendant's contention that the complaint fails to state a cause of action, and since both parties desire to determine said point without inconveniencing a large number of witnesses by preparing at this time for the trial of the entire cause, it may be deemed that the first witness has been sworn and that the said defendant has seasonably objected to the introduction of any testimony whatever on the grounds that the complaint fails to state a cause of action against the defendant State of California, and that thereupon the matter may be argued and submitted to the court."

Pursuant to said stipulation the matter came on for hearing on May 27, 1946, at which time defendant State of California's objection that the second amended complaint failed to state a cause of action against defendant State of California was argued and submitted to the court for decision. On August 27, 1947, judgment was rendered in favor of defendant State of California that plaintiffs take nothing as against said defendant. Plaintiffs thereupon filed an appeal from said judgment.

Thereafter, upon motion of plaintiffs, the cause was transferred to Los Angeles County for trial against defendant city of Los Angeles and a judgment was entered in favor of plaintiffs against said defendant city of Los Angeles, following a jury verdict. Upon appeal this judgment was reversed by the Supreme Court (*Gillespie* v. *City of Los Angeles* (1950), 36 Cal.2d 553 [225 P.2d 522]), it being held that the city of Los Angeles had no authority to remedy the dangerous and defective condition and was under no duty to warn of its existence or to request the state to remedy, but that, rather, the State of California, through the Division of Highways of the State Department of Public Works, was alone charged with the duty of properly maintaining the highway.

Following this decision of the Supreme Court, the instant appeal, which, by stipulation, was held in abeyance until complete disposition of *Gillespie* v. *City of Los Angeles,* was pursued and appellants contend that ''the question is thus squarely presented as to whether Section 688 of the Political Code (now Section 16041 of the Government Code), authorized the maintenance of actions for negligence against the State of California, and whether or not by said section the State of California gave its consent to be sued.'' Respondent in reply states that that is not the question here presented but rather the question is whether the State of California is liable in tort for negligence which may occur in the discharge of a governmental function.

Section 688 of the Political Code as it read at the time involved in the instant case provided as follows:

''Any person who has, or shall hereafter have, a claim on express contract or for negligence against the State must present the claim to the State Board of Control in accordance with the provisions of section 667 of this code. Should the claim not be allowed by the State Board of Control, the person having the claim is hereby authorized, subject to the conditions contained in this section to bring suit against the State on such claim and to prosecute such suit to final judgment.''

Appellants cite *Welsbach Co.* v. *State,* 206 Cal. 556 [275 P. 436], which considered the statute which was the forerunner of Political Code section 688 (Stats. 1893, p. 57), and quote from page 558 thereof as follows:

''Prior, also, to 1893 persons having causes of action against the state for injuries arising by reason of the negligence of its officials or employees were not permitted a recovery against the state in the courts, but were relegated to the uncertain mercies of the legislature for relief. It was doubtless for the purpose of a definite departure from the long-held rule of law that the sovereign could not be made a party to actions of any sort against it without its consent, that the legislature of California, in its wisdom, saw fit to adopt the act of 1893, above referred to. The title of said act, as we have seen, is general and remedial and indicated the purpose of the legislature to so far work a departure from the old hard rule of nonliability as to permit those classes of actions to be maintained against the state which are expressly referred to in the section of the act above quoted. When we turn to the body of the act and of said section

thereof we find that its language is also broadly general and inclusive. It provides that 'All persons who have, or shall hereafter have, claims on contract or for negligence against the state . . . are hereby authorized . . . to bring suit thereon against the state.' It would seem from the foregoing language that it was the intent of the legislature to embrace within the permissive terms of said statute those two great divisions or forms of actions which are included within the phrases 'Ex contractu' and 'ex delicto' and which embrace, generally speaking, all those forms of actions through which remedies between individuals are sought in courts of justice.''

Appellants also cite *Berryessa Cattle Co.* v. *Sunset Pacific Oil Co.*, 87 F.2d 972, in which the Ninth Circuit Court of Appeals, in referring to the Welsbach case, said at page 974:

''The Supreme Court held that the right of recovery in such a case arose from an implied contract to be recovered in an action indebitatus assumpsit and that such an action was expressly authorized by an act of the California Legislature of February 28, 1893 (Cal.St. 1893, p. 57). *Welsbach Co.* v. *State of California,* 206 Cal. 556, 275 P. 436. This decision, and its companion case, *Whyte* v. *Jordan,* 206 Cal. 552, 275 P. 438, was rendered February 26, 1929. The Legislature of the State of California was then in session and immediately passed an act, approved May 27, 1929, repealing the act of February 28, 1893 (Session Laws of Cal. 1929, c. 516, p. 890), which had been held· to authorize a suit against the state. By the same act it provided for the method of ascertaining and paying claims against the state, adding sections 686 to 692, inclusive, to the Political Code. None of these sections authorizes a claim against the state upon an implied contract. For instance, section 688 authorizes a claim 'on express contract or for negligence,' whereas the Act of February 28, 1893 had authorized a suit on 'claims on contract or for negligence.' It is clear from this legislation that the Legislature intended to withdraw its consent that the state might be sued upon implied contract including a contract for the recovery of taxes erroneously or illegally collected. Section 688 Cal.P.C. was amended in 1931 (Cal.St. 1931, p. 849), and again in 1933 (Cal.St. 1933, p. 2299), but remained unchanged so far as the question under consideration is concerned.''

Appellants argue that the Berryessa case indicates that it was the legislative intent to cut down the waiver of sovereign immunity only in the field of contract, and that the

liability of the state for actions based upon negligence remained as announced in the Welsbach case.

Respondent in reply contends that in considering the question of sovereign immunity as it has been established and exists in California, a distinction must be made between the right and the remedy. Respondent states that the sole issue upon this appeal is whether the state is liable in tort for the negligence of its officers, agents, or employees which occurs while the state is acting in a sovereign or governmental capacity, as distinguished from a nonsovereign or proprietary capacity, and that as to this issue, *People* v. *Superior Court*, 29 Cal.2d 754 [178 P.2d 1], is controlling and determinative. The court there denied prohibition to enjoin the Superior Court in San Francisco from proceeding in a personal injury case against the state upon the ground that the State Belt Railroad there involved constituted a proprietary rather than a governmental function. The Supreme Court reviewed the earlier cases dealing with the doctrine of sovereign immunity, including those cited by appellants, and said at page 759:

"*Denning* v. *State* (1899), 123 Cal. 316 [55 P. 1000], directly involved the question of prospective operation of the act of 1893 on state liability for tort. There an act of negligence by the Board of State Harbor Commissioners occurred after the passage of the act. However, the court did not take note of the problem left open in the prior cases. It merely applied the language of the decisions in *Chapman* v. *State, supra* (104 Cal. 690 [38 P. 457, 43 Am.St.Rep. 158]), and *Melvin* v. *State, supra* (121 Cal. 16 [53 P. 416]), as holdings that the statute of 1893 'did not create any liability or cause of action against the state where none existed before, but merely gave an additional remedy to enforce such liability as would have existed if the statute had not been enacted.' Thus there was adopted in this state the doctrine that state consent to be sued for negligence did not waive sovereign immunity from liability for tort. In the Denning case, however, the question was considered whether in the performance of the plaintiff's duties the state was exercising a business function as distinguished from the discharge of a governmental duty. The court distinguished between governmental and nongovernmental functions of the board, holding that the plaintiff was employed in a distinct branch of the service, viz., the protection against or extinguishment of fires, which even in the case of municipal corporations

was uniformly held to be the exercise of a purely governmental function; and that there was just as strong ground for distinguishing between governmental and proprietary functions of the Board of State Harbor Commissioners.

"In *Welsbach Co.* v. *State,* 206 Cal. 556, 558-559 [275 P. 436] (an action for refund of taxes paid under protest), it was held that an action on the implied contract was within the act. The court pointed out that prior to 1893, claimants on contract or for injuries due to negligence of state officials or employees were not permitted a recovery against the state in the courts, but were relegated to the uncertain mercies of the Legislature for relief; and that it was doubtless for the purpose of a definite departure from the long held rule of law that the sovereign could not be made a party to actions of any sort against it without its consent, that the Legislature of California, in its wisdom, saw fit to adopt the act of 1893. However, after the adoption of the consent statute the doctrine of sovereign nonliability for tort has been deemed to apply to state governmental agencies in the discharge of official duties.

(See, also, *Walker* v. *Department of Public Works,* 108 Cal. App. 508 [291 P. 907] ; *Rauschan* v. *State Comp. Ins. Fund,* 80 Cal.App. 754 [253 P. 173] ; *Western Assurance Co.* v. *Sacramento & S.J. Drainage Dist.,* 72 Cal.App. 68 [237 P. 59].)

"Distinction between governmental operations and those of a proprietary nature was made in *The Western Maid,* 257 U.S. 419, at 433 [42 S.Ct. 159, 66 L.Ed. 299], in reference to government liability for negligence committed by a transport vessel. In that case it was said in substance that since the United States had not consented to be sued for torts, it could not be said in a legal sense to have been guilty of a tort. From this statement the conclusion was drawn by text writers that 'If the state or federal government consents to be sued, however, it may be made responsible for torts.' (Vol. 9, Law and Contemporary Problems, at p. 188.) It has also been said that the state enjoys immunity, not because of any inherent perfection, but rather because of a lack of remedy against it. (Vol. 9, Law and Contemporary Problems at p. 219.)

"Exponents of the most extreme application of the doctrine of sovereign immunity hold that the language of a statute giving consent to be sued in contract or tort (although it gives consent to be liable in contract) does not give consent to liability for tort; but that express constitutional or legislative consent must appear before tort liability attaches. This view

is expressed in decisions such as *Riddoch* v. *State*, 68 Wash. 329 [123 P. 450, Ann.Cas. 1913E 1033, 42 L.R.A.N.S. 251], where it was held that consent by the state to be sued on a claim imposes no new liability and the immunity of the sovereign is a defense which has not been waived. The Washington court stated that if a distinction existed between state governmental functions and acts considered nongovernmental or commercial, the facts (involving an injury to the plaintiff by the falling of a defective rail from a balcony in the state armory rented for the evening for athletic entertainment), did not warrant drawing the distinction favorably to the plaintiff.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"With the possible exception of *Rauschan* v. *State Comp. Ins. Fund, supra* (80 Cal.App.754), which followed *Riddoch* v. *State, supra* (68 Wash. 329 [123 P. 450, Ann.Cas. 1913E 1033, 42 L.R.A.N.S. 251]), the decisions in this state do not foreclose, but seem to favor the proposition that sovereign liability exists for negligence in the state operation of an industrial or business enterprise. Therefore, pursuant to those decisions headed by the case of *Green* v. *State, supra* (73 Cal. 29 [11 P. 602, 14 P. 610]), it should be concluded that where the state engages in industrial or business enterprises, as distinguished from purely governmental activities, tort liability attaches and may be adjudicated pursuant to the consent statute. Insofar as the decision in *Rauschan* v. *State Comp. Ins. Fund, supra* (80 Cal.App. 754), is not in harmony with the conclusion herein, it is disapproved."

It is not contended by appellants that in the instant case the maintenance of the highway was a proprietary function and not a sovereign or governmental function. ▇ As this court said in *Yonker* v. *City of San Gabriel*, 23 Cal.App.2d 556, at pages 558-559 [73 P.2d 623] : "The management, control, construction and maintenance of public highways is by all of the authorities which we have examined and to which our attention has been called designated as a governmental function as distinct from any proprietary undertaking or business carried on by a city."

▇ Notwithstanding the earnest and able argument of appellants we must agree with respondent's contention that *People* v. *Superior Court, supra,* is determinative of the question involved upon this appeal, and that it is the law of this state that the state is not liable in tort for the negligence of its

officers, agents or employees which occurs while the state is acting in a sovereign or governmental capacity.

Appellants contend that the modern trend of judicial interpretation favors imposition upon the state of the same liability and responsibility as is imposed by law upon individual or corporate defendants, and appellants cite numerous cases from other jurisdictions. It would serve no useful purpose to discuss these authorities for we regard the question as settled by the decisions of our courts, and it must remain so until changed by either the Supreme Court or by the Legislature. It is apparent that the Legislature has at all times been aware of the court's interpretation of the 1893 statute and has moved to correct it when it appeared that the legislative intent was being misconstrued. Hence the 1929 codification as Political Code, section 688, following the decision in the Welsbach Company case, withdrew the remedy as to implied contract. In 1942, in *Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505], it was held that section 14, article I, of the state Constitution was both substantive and remedial though recognizing the right of the Legislature to establish procedural requirements for the pursuit of claims in eminent domain, and the Legislature then enacted Political Code section 688.1, prescribing such procedural requirements. It is significant that the Legislature has also considered and adopted statutes involving the specific waiver of sovereign immunity and acceptance of liability for tort committed in a governmental activity—Vehicle Code, section 400, and Government Code, sections 53051 et seq. It is also significant that it was the 1929 Legislature which limited the waiver of immunity from tort liability to the operation of motor vehicles (Civ. Code, § 1714½, now Veh. Code, § 400). It is also worthy of note that Assembly Bill No. 581 was introduced at the 1951 Regular Session of the Legislature for the purpose of effecting a complete waiver of immunity from tort liability, and was never even taken up for consideration in committee.

No other points raised require discussion.

In view of the foregoing the judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 22, 1953. Carter, J., was of the opinion that the petition should be granted.