[S. F. No. 18818.   In Bank.   Oct. 23, 1953.]

GINO GUIDI, Appellant, v. STATE OF CALIFORNIA et al., Respondents.

Remington Low, Clarence B. Knight and Sydney F. De-Goff for Appellant.

Dana, Bledsoe & Smith and Joseph W. Rogers, Jr., for Respondents.

TRAYNOR, J.—Plaintiff Gino Guidi brought this action against the State of California, the State Agricultural Society, and several individual defendants, to recover damages for personal injuries sustained at the state fairgrounds in Sacramento. The trial court granted the motion of the state and the society for judgment on the pleadings, on the ground that the state fair is operated in the state's governmental capacity and that the state and society are therefore immune from suit. Plaintiff appeals from the ensuing judgment in favor of the state and the society.* We have concluded that the defense of governmental immunity from liability for tort is not available to the state and the society, and that the judgment must therefore be reversed.

Plaintiff alleged in his complaint: Defendant State Agricultural Society plans, holds, and controls the state fair at Sacramento. At all relevant times, defendant Golden State Fire Works Company was the servant, agent, and employee of defendant State of California, and defendant Douglas Robb was the servant, agent, and employee of defendants L. D. Lockwood and Jane Doe Lockwood. On September 3, 1950, plaintiff paid for his admission to the state fair and entered the fairgrounds. The accident occurred while he was

---

*The record does not reveal the present status of plaintiff's action against the other defendants. The judgment in favor of the State of California and the State Agricultural Society is final as to them, however, and is appealable whether or not the action against the other defendants is still pending. (*Rocca* v. *Steinmetz*, 189 Cal. 426, 428 [208 P. 964].)

standing near the entrance to the horse show arena. In his first cause of action, he alleges that defendants State of California, State Agricultural Society, and Golden State Fire Works Company "so carelessly and negligently controlled, operated, supervised and maintained the said fairgrounds and the fire works exhibition at said Fair" that a certain horse, "Murietta Surprise," owned by defendants L. D. Lockwood and Jane Doe Lockwood, "became frightened and was caused to, and it did, run into, knock down and trample the plaintiff," causing severe personal injuries. The second cause of action follows the allegations of the first cause of action, and alleges in addition that defendants State of California and State Agricultural Society "carelessly and negligently failed to maintain the safeguards to protect the public, including the plaintiff, from the animals stabled, exercised, led and ridden" in the vicinity of the horse arena, so that "Murietta Surprise" was permitted and allowed to knock down and trample plaintiff. The third cause of action follows the allegations of the first cause of action, and alleges in addition that defendants L. D. Lockwood, Jane Doe Lockwood, and Douglas Robb "so carelessly and negligently controlled and maintained" the horse that it became frightened and was caused and permitted to run into and trample plaintiff. Plaintiff alleged compliance with the claim statute. (Gov. Code, § 16044.)

█ The state and its instrumentalities and subdivisions are not immune from liability for torts committed while engaged in proprietary or business activities. (Gov. Code, § 16041; *People* v. *Superior Court*, 29 Cal.2d 754, 761-762 [178 P.2d 1]; *Muses* v. *Housing Authority*, 83 Cal.App.2d 489, 502 [189 P.2d 305].) In the present case, it appears from the complaint that one or both of two activities conducted by the state or its agents led to plaintiff's injuries: the exhibition of fireworks and the maintenance of the horse arena. The only question to be determined on this appeal is whether as a matter of law such activities are governmental.

Defendants contend that the state fair is organized and operated solely to interest and educate the general public in agricultural and industrial subjects, a governmental activity, and that the maintenance of the horse arena and exhibition of the fireworks are likewise governmental activities since they are connected with the operation of the fair.

█ Governmental immunity, however, turns on the nature

of the particular activity that leads to the plaintiff's injury, not on the identity of the governmental subdivision or agency carrying on the activity, or on the fact that the facility in question may also be used for governmental purposes. (*Chafor v. City of Long Beach,* 174 Cal. 478, 488 [163 P. 670, Ann. Cas. 1918D 106, L.R.A. 1917E 685]; *Rhodes v. City of Palo Alto,* 100 Cal.App.2d 336, 341 [223 P.2d 639]; *Boothby v. Town of Yreka City,* 117 Cal.App. 643, 651 [4 P.2d 589]; *Bertiz v. City of Los Angeles,* 74 Cal.App. 792, 797 [241 P. 921].) Thus, in *People v. Superior Court, supra,* 29 Cal.2d 754, we held that the State Belt Railroad was operated by the State Harbor Commission in a proprietary capacity, although that agency prevented and extinguished fires on the waterfront in its governmental capacity. (29 Cal.2d at 760.)

Similarly, in the present case we are not concerned with the possible immunity of the state from liability for negligence in connection with agricultural and educational activities at the state fair, but only with its claim of immunity for negligence in the course of setting off fireworks and maintaining the horse arena.

Most of the decisions relied upon by defendants are factually dissimilar to the present case. Two decisions, however, require discussion. In *Melvin v. State* (1898), 121 Cal. 16 [53 P. 416], a spectator at a horse race at the state fair in Sacramento was injured by the collapse of the grandstand owing to the negligent maintenance thereof by the State Agricultural Society. It was held that plaintiff could not bring an action against the state. The accident took place, however, in 1891, two years before the passage of the consent statute relied upon by plaintiff in the present case. (Stats. 1893, p. 57; now Gov. Code, § 16041.) Since it had previously been held that the consent statute was not retroactive (*Chapman v. State,* 104 Cal. 690, 693 [38 P. 457, 43 Am.St.Rep. 158]), the Melvin decision did not decide whether an action could be maintained thereunder (*People v. Superior Court, supra,* 29 Cal.2d 754, 759; *Talley v. Northern San Diego Hosp. Dist., ante,* pp. 33, 36-37 [257 P.2d 22]) and, accordingly, is not controlling here. Defendant also relies on *Dillwood v. Riecks* (1919), 42 Cal.App. 602 [184 P. 35]. There, plaintiff's horse was destroyed by a fire at a stable on county fairgrounds, through the negligence of county employees. Plaintiff contended that the county operated the fairgrounds in its proprietary capacity, relying upon *Chafor v. City of*

*Long Beach, supra,* 174 Cal. 478. The court held that the county could not act in a proprietary capacity, on the ground that "counties being but agencies of the state, their functions are exclusively governmental and are such only as are imparted to them by the state." (42 Cal.App. at 608.) The Dillwood case is directly contrary to our decision in *People* v. *Superior Court, supra,* 29 Cal.2d 754, where we held that the state and, necessarily, its subdivisions, may act in a proprietary capacity. (See, also, *Muses* v. *Housing Authority, supra,* 83 Cal.App.2d 489, 502.) The Dillwood case is disapproved insofar as it holds that counties may act only in a governmental capacity.

In several cases municipal corporations either engaged in activities for the amusement and recreation of their citizens or allowed their property to be used for such purposes, and it was held that they acted in a proprietary capacity. Thus, in *Chafor* v. *City of Long Beach, supra,* 174 Cal. 478, the city authorized free use of the municipal auditorium by the Sons of St. George to celebrate Queen Victoria's birthday. The public was invited. A parade led by the municipal band terminated at the auditorium. The approach to the auditorium collapsed under the weight of the crowd seeking admission to attend further festivities. Similarly, in *Sanders* v. *City of Long Beach,* 54 Cal.App.2d 651 [129 P.2d 511], the same auditorium was used by the city to advertise itself and entertain the public during "Know Your City Week" by giving information concerning the various activities of departments of the city. Plaintiff was injured while attending motion pictures at a room in the auditorium. Again, in *Rhodes* v. *City of Palo Alto,* 100 Cal.App.2d 336 [223 P.2d 639], the city recreation department operated a community theater in a public park for the entertainment of its citizens. Plaintiff was injured while attending the reading of a play at the theater.

In our opinion, the Chafor, Sanders, and Rhodes cases, *supra,* are controlling here, and require the conclusion that the state is acting in a proprietary capacity when it enters into activities at the state fair to amuse and entertain the public. The activities of defendants do not differ from those of private enterprise in the entertainment industry. As in *People* v. *Superior Court, supra,* the state, by its agents, committed the tort while engaged in a proprietary activity, and the trial court therefore erred in concluding that the

consent statute did not allow maintenance of the action. The statements in *Melvin* v. *State, supra,* 121 Cal. 16, 22, indicating that the State Agricultural Society engages in governmental activities only in conducting the state fair are inconsistent with the foregoing cases and are disapproved.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.