[Civ. No. 9689.   Third Dist.   Oct. 16, 1959.]

ROBERT ZEPPI et al., Appellants, v. STATE OF
CALIFORNIA et al., Respondents.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald W. West for Appellants.

Robert E. Reed, Harry S. Fenton, Robert F. Carlson, Kenneth G. Nellis and Raymond A. Leonard for Respondents.

WARNE, J. pro tem.* — Plaintiffs brought this action against the State of California, the Department of Public Works of the State of California, the Division of Highways, certain named individuals as employees and agents of the defendants, and one Reginald Blackler, administrator of the estate of Leo Kroger, deceased, to recover damages for personal injuries allegedly sustained by plaintiffs as the result of the creation and maintenance of a dangerous or defective condition, and an absolute nuisance *per se* of a portion of the state highway, and the negligent operation of an automobile being driven by the decedent, Leo Kroger.

The specific allegations concerning the condition of the highway are: That said highway was 18 feet wide and paved with concrete; that it was divided into two lanes, one for traffic proceeding easterly and one for traffic going westerly; that immediately adjacent to said paved concrete portion there existed at the time of the accident, for a considerable width, a freshly plowed or graded shoulder 2 to 3 inches below the level of the pavement; that by reason of the shoulder being below the pavement, an automobile being driven upon said highway at a reasonable speed might accidentally, or be required to, drop from said pavement onto the shoulder in which event it would be subject to being thrown out of control and into a skid; that because of the narrow width of the pavement

---

*Assigned by Chairman of Judicial Council.

and the lack of a hard shoulder, it required more than ordinary driving skill to keep an automobile from being driven onto the shoulder; that there were no reasonable warning signs posted, nor any reasonable warning or notice of said dangerous or defective condition.

It is further alleged that while plaintiffs were driving an automobile in a westerly direction on said highway, the decedent Kroger was also driving his Dodge automobile in an easterly direction and as the result of the dangerous and defective condition of said highway, the decedent was caused to go off the pavement and onto the shoulder, which caused him to lose control of his car which then went into a skid and collided with the automobile in which plaintiffs were riding, thereby proximately causing injury to the plaintiffs.

The state and its agencies filed a general demurrer to the complaint which the trial court sustained without leave to amend on the ground that the state, in its governmental capacity, was immune because of its sovereign capacity, and further that the facts alleged did not describe a nuisance nor a factual situation that could be determined to be a nuisance. From the ensuing judgment in favor of the state and its agencies plaintiffs have appealed. We have concluded that the judgment must be affirmed.

Section 3479 of the Civil Code provides in part that: ''Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of . . . any public . . . highway, is a nuisance.'' ██ However, as stated in *Vater* v. *County of Glenn,* 49 Cal.2d 815, 820 [323 P.2d 85], the court said: ''In considering whether the facts alleged are sufficient to constitute a nuisance, we must keep in mind that, in order to state a cause of action based upon this theory, the plaintiff must show that a legislative body has declared the condition complained of to be a nuisance.'' ██ We do not feel that the situation described in the complaint and the claimed defective condition constituted an *unlawful* obstruction of the highway and the free use thereof in the customary manner within the meaning of the statute, although the existence of a drop from the level of the pavement to the adjacent ''freshly plowed or graded shoulder'' undoubtedly could be found to be a dangerous condition requiring notice thereof or the erection of warning signs. ██ However, the state and its agencies, in the absence of statutory or constitutional provisions to the contrary, are immune from liability for torts in the discharge of

governmental duties and activities. (*Vater* v. *County of Glenn,* *supra.*)

Appellants next contend that the maintenance of a highway is not purely governmental activity, but rather a ministerial function to which sovereign immunity does not apply. The rule in California is contrary to this contention. (*Yonker* v. *City of San Gabriel,* 23 Cal.App.2d 556 [73 P.2d 623] ; *Bettencourt* v. *State,* 123 Cal.App.2d 60 [266 P.2d 201, 43 A.L.R.2d 545] ; *Gillespie* v. *City of Los Angeles,* 114 Cal. App.2d 513 [250 P.2d 717].) In the Bettencourt case it was held that bridges have always been regarded in California as part of *our highways,* and that the maintenance and operation of publicly owned bridges, toll or otherwise, was a governmental function.

In the Yonker case, *supra,* the court pointed out that all authorities agree that the management, control, construction and maintenance of public highways is a governmental function as distinguished from any proprietary undertaking or business carried on by a public body.

Likewise, in the Gillespie case, *supra,* it was held that the management, control, construction and maintenance of public highways are governmental functions as distinguished from any proprietary undertaking or business carried on by a city.

Hence it seems clear to us that the maintenance of a highway is a governmental activity as distinguished from a mere ministerial function, and that under such conditions the rule of sovereign immunity applies in the instant case.

Nor is there anything in *Guidi* v. *State,* 41 Cal.2d 623 [262 P.2d 3], contrary to our holding here. Paraphrasing what was said in the Bettencourt case, *supra,* concerning the Guidi case, the court there considered most of the California cases concerning the difference between governmental and proprietary functions and held that the state, although possibly immune from negligence in connection with agricultural and educational activities at the State Fair, was not immune from negligence in the course of setting off fireworks and maintaining the horse arena there, for the reason that the latter activities do not differ from those of private enterprise in the entertainment industry, and hence the state, as to these activities, was acting in a proprietary capacity. Obviously there is no similarity between the state maintaining its highways or highway systems and the setting off of fireworks or operating a horse arena.

█ Lastly, appellants strenuously argue that the doctrine of sovereign immunity should be reconsidered and discarded. The answer to this contention is found in *Vater* v. *County of Glenn, supra,* wherein the court said, at page 820: "Most of the authorities who have recently written on the subject strongly advocate abolition or modification of the principle of governmental immunity, which lets the loss caused by tortious conduct of the government rest on the injured individual instead of distributing it among all the members of the community, the beneficiaries of the governmental activity. (See e.g., 2 Harper and James, The Law of Torts (1956), 1612; Prosser on Torts (2d ed. 1955), 775; Borchard, *State and Municipal Liability in Tort—Proposed Statutory Reform,* 20 A.B.A.J. 747 et seq.; Kuchel, *Should California Accept Tort Liability?* 25 Cal. State Bar J. 146, 151.) However, the abrogation or restriction of this doctrine is primarily a legislative matter (see *Talley* v. *Northern San Diego County Hospital Dist.,* 41 Cal.2d 33, 41 [257 P.2d 22]; *Waterman* v. *Los Angeles County General Hospital,* 123 Cal.App.2d 143, 144 [266 P.2d 221]), and, where, as here, the Legislature has clearly expressed its intention to maintain immunity, that intention is controlling."

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 4, 1959, and appellants' petition for a hearing by the Supreme Court was denied December 10, 1959. Peters, J., was of the opinion that the petition should be granted.